Good afternoon ladies and gentlemen, Mr. Young and Ms. Hunt. Thank you for coming again. Nice to see you. And I'll ask Judge Graber, who is appearing by video, whether she can hear us. I can. And we can hear you just fine. Nice to see you. Great. Thank you. We have a new panel. We start from scratch. I appreciate your patience in all of this. You may proceed. Good afternoon. My name is John Young. I represent Levi Jackson. I should probably start out with the last two briefings in this case. No matter how I slice things, I keep coming up with a merits decision, both on the IAC aspect of the felony murder instruction. I'm sorry. I'm not hearing you very well. Try again. I'll use the microphone. There you go. No matter how I slice things, I keep coming up with a merits decision, both on the IAC aspect of the felony murder instruction, on the ineffectiveness aspect, and also on the underlying due process claim. Counsel, I have a procedural question for you. In the withdrawn opinion in footnote 9, the court previously stated that the felony murder instruction issue was embedded in the ineffectiveness claim because there was a procedural default, essentially, with the direct due process issue. And it appears that the reason for the procedural default was that this was not preserved at trial or on direct appeal. So do you agree or disagree with that footnote, that the only thing that was preserved for us procedurally is the indirect ineffectiveness claim? I would disagree with that, Your Honor. The ineffectiveness claim was always part and parcel. It always accompanied the underlying due process claim. But for the due process claim to have been defaulted, there would have had to have been a clear and expressed finding of an independent and adequate State bar at the State level. And there never was any such finding. It's generally true, but what I'm wondering about is it is true that generally an ineffectiveness, a showing of ineffectiveness is cause for a procedural default. Under Martinez, a showing of ineffectiveness at the PCR level would be cause if PCR is the first opportunity to raise an IAC claim. And I'm not talking about that. I'm talking about whether if the — first of all, the underlying due process issue was raised in the PCR, right? Yes, it was. I was the first to raise it. Okay. But it may have been procedurally — it appears that it was procedurally defaulted by not having been raised in the trial court or on appeal. It probably should have been procedurally barred, the underlying due process claim, but the State never so held. There was no clear and expressed finding that there was a procedural bar. Well, it did say in the original PCR that various claims were either waived or precluded by having been raised. And it had a list of what was precluded, but it didn't have a list of what was waived. And there's a pretty good guess that this was waived. But suppose it was. That's what I want to know. Suppose it was. So then it's barred. But why doesn't the ineffectiveness in — or does the ineffectiveness that you're otherwise claiming in the trial and appellate court then lead to the fact that it is — wasn't decided on the merits and there's cause and prejudice? And then does that lead to a de novo standard? I mean, ultimately what we're looking at, what we're getting ourselves to, is there is a de novo standard or an edpa standard. I'd sure like to help you on your way to a de novo standard. I'm not hearing you. I'm sorry. I would like to help the Court get to a de novo standard. I'm not sure I can see a way to do it. I think that — Well, then what difference does it make whether it was — whether they decided the due process issue or the IAC issue? They at least decided the IAC issue, so why are you worrying about it? I think that the State court clearly decided the IAC issue, and that was a merits decision. On reconsideration, the State court decided. Right. Well, that seems fairly clear. And if that's all you — as far as you want to get, then it's not very difficult. The question is, do you want to get to the underlying merits of the — on a de novo basis of the due process issue, and can you? Well, that's kind of where I was going with this train of thought. Looking at the underlying due process issue, which was not held to be defaulted at the State level and so is not defaulted in Federal court, but looking at the underlying due process claim, that claim — it appeared to me initially that that claim was just never decided by the trial court. It appeared to the district court that that claim was just never decided, and that's why the district court went with de novo review. Johnson v. Williams has changed that and says we now presume that it was decided. So we're indulging a presumption here that Judge Sabalos at the trial court level did decide a due process claim. He must have decided it against me because I didn't prevail. The decision on the due process claim was either — it could not have been that there was no error because that would be contrary to Martinez. It would be contrary to Miles, at least the way that Martinez interprets Miles. And it would also be contrary to, as the State points out in its 28J letter, the recent case of Perez. So I don't think that the presumption that we indulge is that the State court decided that there was no error. I think that the presumption that we have to indulge — But, counsel, the State very well could have decided, as in Perez, that any error was harmless. And I would appreciate on the merits you addressing that question because it seems to me difficult to see how on the particular facts of this case any error could have made any difference. Yes. Exactly, Your Honor. That's exactly where I want to go. At the State level, if we're indulging this presumption, it must have been a harmless error analysis. And a harmless error analysis at the State level always gets the Brecht v. Abramson standard. That's Frye v. Plyler in 2007. Brecht v. Abramson always applies in 2254 cases regardless of what, if any, review is conducted for harmless error by the State courts. So — I'm a little — Yes. Go ahead. Well, all I wanted to say is this. It doesn't much matter whether you get there that way or you get there through Strickland because Strickland is the same as Brecht, essentially. So wherever we are, we're basically in the same place, which is a harmless error standard that's something like, was it likely or probable or something like that. Right. Which takes us to the facts, which is what I'm trying to get at. Factually, it's difficult to see how the jury would have come to any other conclusion than the one it came to, factually, regardless of the way in which that instruction was phrased. And so I would like you to discuss how, in an evidentiary sense, you think it's likely that the outcome could have been different. Factually, as we start talking about the facts, let me first say that the facts in the State's answering brief come from the Arizona Supreme Court's 1996 opinion, which takes its facts from the aggravation mitigation hearing, which occurred after the trial. The aggravation mitigation hearing, the sentencing, got its facts from Ray Hernandez, who did not testify at the trial. So when we're talking about facts — But, I mean, to some degree, I'm having the same problem as Judge Graber. No matter what the facts were, the facts were at least this, as I understand it. They took this woman. They wanted to rob her. They took her to the desert, and they killed her, and they robbed her. I mean, and it doesn't matter who shot her, which one of them shot her, or any of that, for purposes of the felony murder rule. Right? Well, for purposes of the murder, I think it might matter. I just want to make sure that we're dealing with the facts from the trial and not the facts from the sentencing. Okay. Are there facts that I just recited, not the facts of the trial? No. I don't care who shot her. I don't care what the circumstances were. There were facts at the trial that Mr. Jackson was present. There were facts that he was not present. He was not present standing there, but he was in the car. There were facts that he'd — there were facts that he was not present at all. At least one person said that he had told them that he was not present at all. There were facts that he committed the murder himself. There were facts that he was present when somebody else committed the murder. But that doesn't matter for purposes of the felony murder rule. Well, I think that it might. And I honestly could not invent better facts prejudice-wise than we have here. Keeping in mind — Counsel, can I — can I focus you on, again, the withdrawn opinion? Because the background facts stated in Part 1 about the robbery, are those, in your view, accurately stated from the Jackson trial or not? To be honest, it's been a while since I've read the withdrawn opinion. I can tell you that the background facts in the State's brief are not accurate. Most of the information came from a single witness to the offense, and that was Ray Hernandez. He did not testify at trial. So I want to be careful what the Court is relying on for facts. I also want to keep in mind that the jury did deadlock in this case. And that's Argument 3 in opening brief. So the evidence was not overwhelming, at least as far as the jury was concerned. They sent out a note that said, Three jurors are voting not guilty for lack of convincing evidence. None appears to be willing to change his mind. Suggestions on how to proceed would be appreciated. Thank you. They also sent out a cartoon of a hung jury. So that's not striking me as overwhelming, at least not overwhelming as far as the jury was concerned. When they did reach a verdict, and I think this is very important, when they finally did reach a verdict, they did so on a preponderance standard. And I'd like to talk about that more. I'm not going to have a ton of time. The jury foreman, Bruce Prince, sent a letter to the judge outlining his trouble, and his trouble and the trouble that the jury was having with the case was precisely under this instruction. The way that they saw it, quote, he was automatically guilty of first-degree murder. That's what his letter stated. David White's arguments in this case made this instruction not harmless, because he repeatedly used this instruction to misstate felony murder law, both in opening and in closing argument. And he said, quote,  both in opening and in closing argument. Felony murder, if you commit that in the course of committing another felony, such as robbery or kidnapping, someone dies. That's it. That's what he told the jury, leaving out, as does the instruction, in furtherance and in the course of. So this was a problem. I wondered about that, because I mean, first of all, this is an issue on which we haven't granted a COA, is that right? There has been a grant of COA by the district court. Not on the reasonable doubt instruction. Oh, not on the reasonable doubt instruction. Right. Is that where you're headed with this, what you're talking about? That's where I segwayed into the preponderance standard. Right. And that's something that I don't have much time remaining. But also, it hasn't been framed. It's been framed as a challenge to the failure to give a reasonable doubt instruction rather than as a prosecutorial misconduct issue. What I've tried to frame it as, it doesn't really matter who messed up the instruction. The judge doesn't have to give an instruction. Right. But that's where you're challenged, is not giving the instruction. What's important here is the standard that the jury is applying. The only standard that the jury ever heard from anybody was from the prosecutor. And so this is an instance that this court has anticipated in the Losco. Supplemental instruction may be helpful or even necessary in a few cases where, through counsel and argument or the court through other instructions, may have invoked uncertainty or confusion as to its meaning. This is exactly the Losco kind of problem. And so the only way that we can say that the jury applied anything other than the preponderance standard, which the prosecutor gave them, is to say that the jury knew more about law than David White did, which I should probably leave be. The jury heard nothing else about what reasonable doubt might be. I should. Going back, I was still working on the prejudice. David White's comments were contrary to Arizona law. Automatic guilt is not Arizona law on felony murder. Well, let's assume that you're correct on that. I think the question that we've been struggling with today is, if you were arguing to the jury that the in furtherance of Prong had not been met, how would you argue it from the facts only presented to the trial court? Well, I would argue exactly the same language that the trial court and the Arizona Supreme Court both used and say that, as they both pointed out, I would also point out to the jury, in this case it was absolutely unnecessary for the defendant to kill his victim in order to achieve his goal of stealing her vehicle and other personal property. That's not just me making that up. That's Judge Sablos at the trial court level. The State proved beyond a reasonable doubt that the victim's murder was senseless. The murder was not necessary to complete Jackson's criminal objective. It had to be necessary, but, I mean, it had to be in furtherance of it. So you might not think it's necessary, but these people for whatever reason might have decided that they didn't want to witness her answer, they're going to kill her. Well, they both said it was senseless. They both said what? I'm sorry? The trial court and the Supreme Court both said it was senseless. If it furthered the underlying felony, that would make at least some sense. It wouldn't make it right, but it would make some sense. This killing was senseless. Why didn't it further it for the ordinary reason that people kill witnesses, i.e., so there are no witnesses? Well, going again to the aggravation mitigation hearing, the only eyewitness to the killing was Ray Hernandez, who said that Levi Jackson killed the victim in this case because the co-defendant, Kevin Miles, goaded him and said that he didn't have the heart to do it. Right. But we throw that out. But going back to the question of the facts as presented at trial, we had two people. We had three people approach the victim. One pointed a gun at her. They took her into the desert area. She was ordered out of the car, and she was fatally injured by a single gunshot wound to the heart. I mean, just taking those facts, why couldn't a reasonable jury have concluded that those facts, that their participation was in furtherance of the crime? Because I don't think that the killing helped anybody to keep her car. I think it made it less likely that they were going to be able to keep her car. If the police were going to be looking for her car anyway, they were certainly going to be looking for her if her car was stolen and she was dead. And she was killed not far out in the desert. It was in the desert, but there are a lot of areas in Tucson that are surrounded by houses. Well, if we were to accept your argument, then essentially murder would never be in furtherance of a carjacking or a robbery because you could always argue, well, you didn't really have to kill the person to take all their property. You could have just intimidated them or whatever. But I think in the ordinary usage and under these instructions, it's hard to see how a jury wouldn't find it to be in furtherance of the robbery and the kidnapping. I guess the flip side of the argument is that murder is not always in furtherance of the underlying offense and robbery case. Well, the relevant question isn't whether they could have. The relevant question is whether at some level of probability they would have. And I gather you've said two things that somewhat interest me in this regard. One of them is that Jackson claims that he wasn't around until after the fact. At least he said that. Somebody, I suppose, maybe could have believed that but could have thought that that was part of the same series of events and therefore he was responsible under the felony murder rule without the furtherance. And then the second thing you said was this business about goading him. Was that in the record in the trial? I'm sorry. I'm still working on it. The goading part was in the sentencing, correct? Goading that his co-defendant had goaded him? That was from Ray Hernandez. That was in the aggravation mitigation hearing. So that was not in the trial testimony? No. I mean, it seems that your argument was, one, you want to argue that he wasn't there at the time of the murder and, two, that the crime had been complete by the time that they all came back to the car, if you believe that scenario of events. But I don't know if that's the argument from the record. The references I have in the record, and I'm way, way over my time and I apologize, but I came here to work and I've got all day. At the trial, there was a neighbor, Terry Labrosse, who said she saw two people, a Hispanic person, which would be Ray Hernandez, and a black person, which would be Kevin Miles, but not a white person, which would be Levi Jackson, approaching John Johnson's house on the day that Mr. Johnson's hand got hit. But if that were all true, wouldn't he not ‑‑ isn't that inconsistent with the verdict that was reached? If he wasn't there at all and, as he claimed, was only picked up after they killed him, after they killed Darylin, how would he be responsible for anything, even under the instruction given? Well, if he wasn't there at all, or maybe he was there for part of the robbery, but not all of the robbery, or he wasn't there at the beginning, there was evidence that he was not with Kevin Miles and Ray Hernandez. It was Mr. Hernandez, not Mr. Jackson, who kept the weapon. It was Mr. Miles, not Mr. Jackson, who kept the car. Did Mr. Jackson keep anything? I'm sorry? Did Mr. Jackson keep anything? He did. Well, he used Darylin's ATM card, so he kept her ATM card and used it to withdraw money. There was a video of him doing so from the bank. He also gave one of the victim's rings to a girl who testified at the trial. So I know that ‑‑ and his fingerprints were found throughout the car on the rearview mirror, but not necessarily on the steering wheel. Also on some packages that were in the trunk of the car. So there's evidence that he was present. There's just no evidence from the time of the killing. There's a confession. One of his confessions was that he was with the person who shot Ms. Bauerlin. There is also a statement from a juvenile detention officer that Mr. Hernandez, Ray Hernandez, told the officer that the black guy, which would be Kevin Miles, had shot Ms. Bauerlin after he and Levi had told him not to do it. And on those kind of facts, I think that the jury, if the ‑‑ those are the kind of facts that could have led to a not guilty on the felony murder charge. Suppose those were the facts. Wouldn't he still be responsible for a felony murder? Suppose they all went to rob the person with guns, and then Levi says, I'm going to shoot her, and they say no. Are they still responsible for a felony murder? Not automatically, no. I'm sorry, what? Not automatically, no. Not automatically, but in terms of whether or not that's in furtherance of the crime, even though they didn't want it to happen. State v. Bennett is spot on point. A robbery murder is not necessarily a felony murder. I understand that, but I'm just asking whether the particular facts that you suggested would absolve him of a felony murder on a proper instruction. I don't think that's true. No, I think not. That's exactly the problem that the jury was having with the case here, was this idea of automatic guilt, and automatic guilt is not what should have happened here. Our questions have taken you over your time, but we'll give you a couple minutes for a rebuttal. Thank you. And even things out, would you put 20 minutes on the clock? May it please the Court, Diane Lee Hunt for Respondents, Apple East, the State. I'd like to briefly touch on some of the procedural issues, but then I would like to get to the merits of the claim, because I think that is the primary issue. And the Court's interpretation of what in furtherance of in the withdrawn opinion is clearly contrary to Arizona law, regardless of what was said in two opinions by the Arizona Supreme Court. The law is clearly contrary to appellant's construction of that term and the construction given to it in the withdrawn opinion. Procedurally, here's a posit, and I want to know what's wrong with it. The issue of the merits issue with regard to the instruction was raised in the PCR. It was preceded, the PCR, the trial PCR judge said some things were waived, some things were precluded by having been raised earlier, and some things he decided on the merits. This claim was almost surely procedurally defaulted and probably in the category of waiver, although it wasn't specifically mentioned. It was then raised to the Arizona Supreme Court, right? So is the appropriate assumption as to the merits of the instruction issue that it was defaulted? Yes. We agree that the claim itself was procedurally defaulted. It wasn't raised at all at trial. It wasn't raised on direct appeal. Right. And it was raised, and I would argue raised sufficiently to present a Federal claim in the PCR. Of course, it had already been defaulted under clearly established. It was exhausted but defaulted. Right. So if that's true, then if we excuse the default, we would have an issue that was raised that was not decided on the merits by the State courts. Well, no. As part of the IAC claim, the Court, and this is what I did not understand. But they decided about the IAC claim. Right. We don't know whether they decided that the instruction was correct or that it was wrong but harmless. Well, part of the IAC. But there wasn't, in fact, wasn't, in fact, lack of appropriate representation. We don't know what they decided. Well, part of the IAC claim, the Court presumably did, in fact, even if the Court didn't separately address the substantive claim, the trial court now we're talking about, even assuming that the trial court overlooked it. Number one, that doesn't mean that the Court, that it's not procedurally defaulted because this Court can look and see whether a court would have deemed a claim procedurally defaulted. And in fact, that happens a lot when the defendant doesn't raise it. So the question is that it was procedurally defaulted, but that the IAC claim would then be cause if it were successful. Well, I don't ‑‑ I don't ‑‑ first of all, the cause and prejudice has never been briefed in this, so I'm not exactly sure. If we're given a future opportunity to brief that issue, then I could do so. But I think the primary point here is that regardless of whether the trial court overlooked the IAC ‑‑ the substantive claim, the Court presumably did not overlook it in terms of the IAC claim. It's an issue in the IAC claim. So whether ‑‑ the only two options here are deferential ed for review or the claim is precluded outright because he didn't raise it as a State claim. But you never argued that it was precluded outright, have you? We have ‑‑ we did argue that it was precluded. You argued that the ‑‑ as I understand it, Counsel, you argued that the direct due process claim was not properly before us. Yes. But the embedded claim within the IAC could be considered, but under the deferential standard. That's your procedural argument, as I understand it. Exactly. I mean, because even if the Court didn't separately address it as a substantive claim, the Court presumably did address it in the context of the IAC claims because it's an issue within the IAC claims. So best case scenario for defendant is that this is ‑‑ that this is reviewed under the deferential standard, certainly not the de novo standard. Even if the Court had never addressed it in this case, there is a ruling by the Supreme Court in the Miles case. But even besides that, assuming that the IAC claims are properly before this Court and this is the procedural issue I was going to get to, there is a slight jurisdictional problem. If the Court finds that the only properly preserved, properly exhausted claim was the IAC claims, that's not a certified issue. No, but the problem with that is ‑‑ It's not what? She's saying it's not a certified issue, which is true, except that that's the way that the district court decided the IAC claim. What the district court resolved the IAC claim by saying, look, there's no underlying due process violation, therefore, there's no IAC. And that's the issue in front of us. And that's ‑‑ I must say to defer it a little bit, that's ‑‑ we spent some time with that on the prior panel saying, where do we go? Because Strickland hasn't been briefed to us in any respect. And the only issue in front of us is whether or not ‑‑ whether or not the due process claim, as decided by the district court, was correct. We said in the prior opinion, and, of course, we're here ‑‑ I'm reconsidering it, and they're hearing it for the first time. We said, well, the district court was wrong on that, and you should go back and resolve the properly exhausted IAC claim on the merits. And I just ‑‑ So tell me where I'm wrong in our analysis. Because if we go another direction, then we have to decide Strickland and prejudice, and that's been tangentially briefed, but really it's not in front of us. I agree that the IAC claims have not been briefed at all. And, in fact, I had no idea that this Court was going to resolve it under IAC. Our argument was that the only ‑‑ This time around, because it was done the other time. Well, what happened was the trial ‑‑ on the one hand, you say that the judge decided the IAC claims based on the substantive claim. Right. But the judge issued a certificate of appealability only on the substantive claim. The judge could have issued ‑‑ Well, that's easily resolved. We can tomorrow issue another certificate of appealability. So it's not worth spending a lot of time on that. Yes, you would have a chance to brief it, perhaps. Right. Well, and ‑‑ Is that what you're complaining about? Yeah. If this Court finds that the IAC claims are properly before it, assuming that that's the case, then I think that the appropriate ‑‑ and if this Court doesn't agree with appellate's ‑‑ with Appley's argument, we're usually appellate in State Supreme Court, Appley's argument, that the Arizona Supreme Court did not resolve that appellate, that Jackson did not fairly present his Federal claims to the Arizona Supreme Court. So then I say that the only claims I see, it should be remanded. Go ahead. Finish. And so basically, we would ‑‑ we re‑urge our argument that this was ‑‑ that as the district court expressly found, this is unamendable to Federal review because the Federal district court found that the Supreme Court in Miles basically resolved this solely under State law. And it's our position that that is true. That is a very hard argument. Because it did say something ‑‑ I assume you're hanging on the language where they said that, in fact, the statute wasn't narrowed or deciding arias. Is that what you're talking about? No. I'm sorry, Judge. My part of Miles ‑‑ what language exactly in the Miles opinion are you relying on? It was the Miles language saying that we don't find that the jurors were materially misled. That's a different question. That's not a State law question. But it is a State law question. Whether they're misled is ‑‑ and this is what I've said. It's a quintessential State law issue. It can also be a due process issue. But the primary question is, is what does Arizona law say about what in furtherance means? Based on what in furtherance means, did this comply with State law? That is a State law question. Just like every other ‑‑ It's a State law question, but what's the answer to it? The Supreme Court said Miles said under State law is that it did not materially misstate it. And more importantly, they said, pursuant to a harmless error analysis, they said regardless, this defendant's conduct clearly ‑‑ this death clearly occurred in furtherance of. Well, we certainly can't rely on Miles. I mean, are you asking us to defer to the Miles ruling on harmless error? I'm sorry, why can't we rely on Miles? Are you asking us to defer to the Miles harmless error? I'm asking you to defer Miles on the State law issue about what Arizona law is and isn't. And that's always been my position. My position has never been once the Court determines what State law is, and then of course this Court can determine under due process whether, based on that construction of State law, whether the jury was misled. Where does Miles say that this is a correct statement of State law? Well, the Miles decision itself, it says, it says we don't find that the statute was materially narrowed, which is true. Citing Arias, but Arias said it wasn't narrowed in a particular way, and one could assume that that's what they're citing to, because it also said it was narrowed in a different way. Well, what the Court is essentially saying, and this is a quote with all the other law, is that it did not materially narrow the statute. But more importantly, the more important question is ‑‑ We had this discussion the last time, didn't we? During the last argument, you and I had a discussion, and it said the instruction did not comply with State law. You're adding the terms didn't materially misstate. It misstated State law. The instruction misstated State law. But the point is, the point is that, and I'm sorry, I apologize if I made it sound more than what I meant. What I meant was, it didn't ‑‑ of course the Court said that this language shouldn't have been given. The same series of events language shouldn't be given. The question is, is how much did it misstate the law? And I just ‑‑ this is the primary point of our argument. The in furtherance language is not what Jackson says it is. What the ‑‑ the in course of an in furtherance of language, the in course of means it just has to occur while the crimes were occurring. This clearly occurred. Kidnapping is a continuous offense. The in furtherance of language does not even require facilitation. Yes, the Supreme Court has repeatedly said that if the death facilitates one of the offenses ‑‑ How somebody thought that Jackson actually wasn't there until afterwards when he was picked up and then he took some of her things? Well, the ‑‑ What about the other people? What? The jurors clearly found that he was there. Why? They found him guilty of the armed robbery. They found him guilty of the kidnapping. And even that letter, which technically no one can consider because the mental processes of the jury cannot be considered, but let's assume we can. That's why ‑‑ that's why the jurors were never asked under state law, well, what exactly do you mean by that? But they even said, we said that he ‑‑ we're finding that he drove the car. We just don't know whether he's the trigger man. So even if you consider that letter, which appropriately we cannot, and even they clearly found that he was a participant to this. Really, really, really briefly, Appella says that Hernandez, this testimony by Hernandez was provided at the sentencing order only. And that's true. But all of this evidence, or 99% of it came in based on Jackson's own multiple confessions to different people. He said, I approached her. I had the cigarette in my ear. I told her to scoot over. And when we went there, I shot her and I killed her. And he knew information that only the perpetrator would know. He said, I told her to scoot over. Everyone else agreed, including Hernandez, even though that was after the death. Yes, he told her to scoot over. But the problem is when you weave all these different factual scenarios together, it's tough to unwind it because the scoot over testimony did not come over, did not come out until the sentencing hearing. Right. But what I'm saying is that all that, that was merely cumulative. All the same evidence was presented at trial based on Jackson's own confessions. And I'd just like to point out that this, that in the withdrawn opinion, this Court said that, oh, you know, the defense was just that he was bragging. A lot of, some of these were not bragging. One of them was after he knew he was about to be arrested. He was tearful. It was a confession. It was not bragging. And he said things that only someone there would know, as the jury found when finding him guilty of armed robbery and kidnapping. He said to one person, he said, oh, I was the one that shot her. And to someone else, his friend who he confessed to, he said, well, I didn't shoot her. I shot her while, a mile shot her while I was turning the car around. The murder did occur while someone was turning the car around. There's only one way that he would know that. If miles were the murderer, he wouldn't tell Jackson, oh, by the way, I shot her while you were turning the car around, or you shot her. He had no reason to know this. There's just, there's no doubt in this case, based on the jury's findings of guilt and that letter that we really shouldn't consider that he was part of it. The most important point here is the end. You know, I mean, you have, you have basically a hung jury. I mean, it was so clear cut. We didn't have a hung jury because the jury found him guilty. They came back to the judge and they said, there are three of us who can't agree. Do you recall that part of it? Remember, they had the three jurors who were holdouts and they didn't think they could reach a verdict. Right, but they eventually found him guilty. Well, I know. I'm just saying, if it's that clear cut, they should have been in and asked. But, I mean, you know, I see, I understand what you're saying, Judge. That's why then it gets, we get concerned about winship problems because then if there's a true winship problem and you have a State not obligated to prove its case, you have the argument of the prosecutor who says, if he's there, he's guilty. That was taken out of context. As I pointed out, when the prosecutor said that, and opposing counsel keeps omitting this every single time. He said, he points out that on the one hand, the prosecutor said, you know, he said that language that opposing counsel says he did. He did. Then he immediately said, and why do I say that to the jury? This argument followed immediately. Because it has to be in the course of it and further and so. So, so. He said it a couple times, if I recall, and I may be recalling. Right. I mean, I mean, it was so, so. But essentially he said, if you think he did it, well, then of course that's beyond a reasonable doubt because why would you think if it wasn't beyond a reasonable doubt? I'm not sure about that. I wasn't prepared to because I wasn't prepared to address this reason. I understand that. You're right. But I'd like to get, let's go ahead and get to the ultimate issue. The issue right about whether this winship, potential winship problem. For purposes of the IEC, of the IEC claim, we don't even have to get to the deficient performance problem. Let's assume that, in fact, the jury wasn't even instructed at all that there is an in course of and in furtherance of language. Under NIDA v. United States Supreme Court, the issue there is whether any reasonable jury could nevertheless find beyond a reasonable doubt that element, even though they weren't instructed on it. So we're assuming, we're not only assuming deficient performance, we're assuming that it wasn't even given at all. And then it's clear, and because the reason it's clear that this was not problematic, it was harmless error, was based on the correct meaning of in furtherance of. And as this Court recently said in Perez, the court of appeals correctly interpreted the felony murder statute in Perez. It just came out. They quote this case, State v. Lopez, that, you know, albeit the fact that it was a court of appeals opinion, the Supreme Court expressly denied review on that. And this happened before, this opinion was issued before Jackson committed his crime. And what Perez says, they say, first of all, they define the offense. Felony murder consists of a person committing a predicate felony, including robbery, and in the course of and in furtherance of the offense or immediate flight from the offense, the person or another person causes the death of any person. Sorry. I apologize. I was just reading it. But now here's where they construe it. Where the killing emanates from the crime itself and is a natural and proximate result thereof, it is committed in furtherance of the felony within the meaning of the statute. All it is is a causation. It's a proximate causation. And you could say, well, when does this come into play? This is an example. So this is a case where she was shot during the robbery. You know, she was shot and killed during the robbery and during the killing. It clearly emanated from the crime. Even during the kidnapping counsel? I'm sorry? You said she was killed during the killing. You meant she was killed during the kidnapping, the course of the kidnapping. She was killed during the course of the kidnapping, certainly. Kidnapping in Arizona is a continuous offense. It continues during the restraint. So the in cursive language is not a problem at all. And I don't think that a posting counsel has ever said that it is. So what the in cursive is a temporal requirement. All that means is it has to occur during the crime or the immediate flight thereof. No, I don't think. I can't agree with you that it's just a temporal requirement. Just the in cursive. The in cursive. I agree with you on that. Well, and in the Widserot opinion, the Court said that it was a temporal requirement and that's been construed clearly in Arizona law. That's the temporal requirement. And it clearly was during the cursive. She was in the middle of being kidnapped. She was on the ground during the kidnapping. The next question is what is the in furtherance of language? And, yes, as the Arizona Supreme Court said in State v. Miles and they said in State v. Arias, facilitation is sufficient. It clearly is sufficient. But the question is, is it required? And the answer is clearly no under well-established Arizona law. The reason it clearly doesn't have to facilitate. What does in furtherance mean, if anything? I mean, we had this discussion before. And it seems to me it drains it out of all meaning whatsoever if it doesn't mean some sort of facilitation. Because otherwise it just conflates it into in the cursive. Well, clearly it's in the cursive. The courts have said. No, no. I'm just saying there are two distinct concepts and you have to meet both. But you seem to be arguing that they're the same. And I think this is we had this discussion last time. No. What the in. Tell me succinctly. What's the difference between in the cursive and in furtherance of? In the cursive is a temporal requirement. That means that it has to occur during one of the ongoing enumerated offenses. The in furtherance of is a proximate causation requirement. It is not in furtherance. Has to proximately cause what? That the killing emanates from the crime itself and is a natural and proximate result thereof. I take the proximate result thereof as being a proximate causation requirement. And it's. That sounds to be reversing what the statute says. The statute says that the killing has to be in furtherance of the crime, not that the crime has to be in furtherance of the killing. Right. And it says it's what it is. What it is is that there's a difference between the killing, which remember  The crime itself doesn't even have to be one of the perpetrators. It can be the victim. It could be a police officer. Clearly, the crime doesn't have to facilitate the murder because the person who commits the killing can be a victim trying to defend himself or herself. So that's why this. The acts that lead to the killing have to be in furtherance. That's what Arias made clear. Right. Isn't the killing that has to be in furtherance? Wait a minute. I'm sorry, Judge. Isn't the killing that has to be in furtherance? It's the acts that lead to the killing that have to be in furtherance. Right. The killing clearly does not have to be in furtherance of it. The question is, is what this in furtherance of? The defendants have to be acting in furtherance of the offenses, yes. But the person who actually does the killing need not be need not do this in furtherance of the offenses. Well, let's take the hypothetical, because I gather it wasn't actually in the evidence, that the robbery was over. They were all about to go home. And Miles goaded Jackson and said, you know, you're a wuss. Why can't you kill her? Or I'm going to go around telling people you're a wuss. Would that be in furtherance of the crime? Absolutely. It doesn't even have to be the defendant himself. Clearly, if one of the defendants actually commits the shooting. It has nothing to do with the crime. It seems to be simply that for other, you know, sort of teenage, macho, silly, horrible reasons, they're going to kill somebody having nothing to do with the crime. They happen to have somebody there, and they're going to just show how violent people they are. There is a definition of in furtherance under Arizona state law. That is the definition that controls here. Okay. What is the definition? And why does it include what I just described? Right. But where the killing emanates from the crime itself is a natural approximate result thereof. The reason that it's an approximate cause thereof is because they have this kidnapping victim there, and the defendant says, you're a wuss. Would they have been there if she hadn't been kidnapped? But that's just contrary to the English language. Because the English language says that it's the killing that the acts of killing that have to be in furtherance of the crime, not that the crime has to somehow lead to the killing in some non-furtherance fashion. Right. But the point is, is that it doesn't have to be in furtherance. Their actions have to be. Here's an example of when the statute does not comply with. They've got the kidnapped victim in the car. One of the defendants decides to take a side trip to visit a friend, and they get sideswiped by a truck, and they get killed. But that's not going to be within the course of either. I mean, what's an example of something that's in the course of but isn't? It's not in the course of there. That's an example of what I'm showing. They're not acting in furtherance. What's an example of something that's in the course of but not in furtherance on your theory? Nothing. A police officer thwarting the crime kills any person. The defendants, yeah, facilitating. That's sufficient. It's not required under clear Arizona law. It's just what they're saying is that the in course of the furtherance of language is not nearly as narrow and circumscribed as Jackson has argued. It's very broad. It's almost as broad as the same series of events. That's the point. And the other point is, is that with regard to this instruction, and I've pointed this out repeatedly, and Jackson doesn't acknowledge it, the reason that they say that it doesn't have to be in furtherance of the offense, the reason that's technically correct, regardless of what the furtherance means, is that it can be during the course of and in furtherance of the flight. It doesn't even have to refer to the offense. I don't understand from your theory why in furtherance, you need even furtherance to me, you're arguing in connection with and in furtherance of are really the same thing. No. Because you've drained, I'm just saying, it seems like all meaning has been drained out of in furtherance of. The thing about the in furtherance of language is that the ---- Because is a concept in connection with. Well, Your Honor, I'm arguing that the in course of is temporal. That's clearly separate from why it occurred. The one is when did it occur. The other one is why did it occur. Those are clearly separate principles. I don't think that I'm conflating or confusing those two. They're clearly separate things. I think that maybe what the problem here is, is that what you're saying is that the in furtherance of language is extraordinarily broad. And that is my exact point. The in furtherance of language is extraordinarily broad. That's a natural consequence of the fact that in Arizona, unlike a lot of states, the perpetrator need not even be, the killer need not even be one of the perpetrators. So it's not facilitation. And so, you know, what I'd like to do, I think this just goes to show why we, why this should be remanded. If this Court finds that the IAC claims are properly exhausted and properly before the case, this case clearly needs to be remanded for an IAC for all outstanding issues. Well, right. That's where we left in the last panel, is that you, we started, we accepted your argument in a sense of saying you've got a narrow issue in front of us. And we said, okay, we've got a narrow issue. There's windship error, at least enough to get through this Strickland gateway that he should have raised it. And therefore, we've got to send it back to the district court to resolve the IAC matter. Well, I did. And there's a real temptation. I mean, all of us want to get to the ultimate conclusion here. But that's kind of, that's kind of where we pared down the case before all of this. Well, and I hope I didn't mislead the Court. My position is that, first of all, is that. You said we have no jurisdiction. What I. To consider the IAC. What I said is that there is a potential issue here about jurisdiction. There is a potential issue here about jurisdiction if the substantive claim is not properly exhausted. So I'm just trying. Right. On the one hand, I'm trying to say. Wait a minute. Here's the legal. You're way over your time. But I don't understand how it could not have been properly exhausted. Go back to the beginning. There may be a procedural default question, but it certainly was properly exhausted. Right. The point is, is that appellate in his petition for review to the Arizona Supreme Court, this is what he did. The heading to his argument in the Supreme Court, it's a substantive claim. The substantive claim is defaulted. It's procedurally defaulted, clearly under Arizona law. Then in the argument, he reiterates, here's all the reasons why you were wrong in Miles. All State law. He then has one sentence reference to. You're claiming that. You're making a Williams sort of a claim, that there was no Federal issue. Well, I'm reiterating on my argument that the Arizona Supreme Court decided to solely under State law. If this Court agrees with me, and that's the argument I'm trying to make. Perhaps I shouldn't even ask you because you're way over your time. I know I am. But Williams seems – isn't Williams a two-way street? That if it's good enough for the State to cite a State – a State law principle which has a Federal parallel, that it's good enough for the – I understand it hasn't been the law up until now. Right. Really, really quickly. First of all, the substantive claim of this Court is that it's procedurally defaulted. So it's only being raised in the context of an IAC claim. He did not – because the State – because the Supreme Court already resolved this under – in Miles, what the appellant had to do to make this substantive part of Federal claim is to say, listen, Judge, I know you decided this, but the reason counsel was ineffective is because counsel should have argued it under Federal  He did not make that argument. In fact, what he did is he had a one-sentence reference to Federal due process on the substantive claim. And then, completely separate from that, he had a one-sentence reference to IAC claims. First of all, we didn't argue that that wasn't preserved, so we're not going to try to argue it here. But that even – he had a one-sentence reference to IAC within the context of his heading, which was the substantive claim. But even assuming that that was – that that was sufficiently presented, his IAC He had a double duty here. Here's the reason – I know – I know, Court, you're inclined just to say we decided this is Miles. But this is why our IAC claim is properly preserved. It's because they should have argued it under Federal constitutional law. This is different. We're saying that counsel in this case should have sort of did something – He cited Strickland, didn't he? What's that? He cited Strickland. He cited Strickland. So Strickland's a Federal case. But the – Why do you say that he – Because the issue is – all right. Even if you cite Strickland, there's lots of cases that say because the – because the substantive claim was decided under State law, an only State law, and we can't review that, then we can't find – we can't find a Strickland violation. It turned on a State law issue, and we can't review that. No. It was only cited under – if he is raising a Strickland issue for – you can raise a Strickland issue for a Federal case. Strickland is preserved. This is – and this is why I think that we're – that everyone's talking past themselves a little bit, and I apologize because it's not my – Let me stop you before you say anything. If Strickland's preserved, and the Strickland error, the Strickland claim is that you didn't raise this objection, then the objection is preserved through all the Strickland deferential lenses. Right. But as the district court found – District court just said, well, I'm not even going to bother with Strickland. I'm just going to get to the merits of that, and that's what we have to do.  But the court did get to Strickland, because what the court said properly, I'm not – this is what the district court found. This is what I've been arguing. Yes, the Strickland claim is Federal, but your Federal claim turned on a State law issue. It turned solely on a State's construction of the State law, and the State court did not resolve it under Federal law. So even though your Strickland claim is preserved, the under – your claim turned on a State law issue, and our argument is that the Arizona – this is exactly what the district court found. And so that is our argument. But even if this Court disagrees that the IAC claims turned on a State law issue – and I think that resolves it right now – then he still has an IAC claim. But this Court has got to find, then, that he fairly presented to the Supreme Court a claim saying, here's why trial counsel was ineffective. They were ineffective because they didn't raise this under Federal grounds, and he did not make that argument, and he did not fairly present it to the court. And that is implicitly what the district court said. But even if this Court finds the IAC claim is properly before it and the sub part, the due process claim, we need to brief that in the State court. Oh, the district court.  I apologize. I'll give you three minutes for rebuttal. Picking up where counsel left off, I definitely did reference the Federal Constitution, both in the PCR at pages 8, 9, 10, 11, 12, and 13, pages 8 through 13. I raised this as a Sixth Amendment and a Fourteenth Amendment claim and under the ex post facto clause. I stated it as a due process and as an IAC claim, and I cited many Federal cases. On the petition for review, which is a petition for review. It's not a brief. I definitely raised it as a Federal issue, and I definitely raised it as an ineffectiveness claim as a Federal issue. Within the 20-page limit that I have under Rule 32.9 for a petition for review and scrunched down into the tiny 12-point font that I was using, I used every single word that I could fit on those 20 pages, including I fit words on the cover page. At pages 3, 4, 5, and 6, I devoted four pages to this argument because this was an important argument to me. I specifically cited Winship, which is a Federal case. I specifically cited the Fourteenth Amendment due process clause. I specifically cited Strickland and Evitz v. Lucey and effective assistance of counsel, and I specifically cited Bowie and ex post facto. I'm doing my best to Federalize this within a very short space of space that I have to do it. I also set out what the problem is. The problem was what got said and what the instruction was, and I set out the problem with Miles. And keeping in mind, within those 20 pages, it was at the time a death penalty case, so I had a lot to work on. There were also a lot of sentencing issues that I had to work on and keep those Federalized. And this was a juvenile death penalty case, so I was trying to keep international human rights law Federalized and raised as well. So in terms of Federalizing this at the petition for review level, I think I did an excellent job. So, yeah. Do you disagree with the concept of in furtherance of that is as broad as the State describes? How do you distinguish? How would you define in furtherance of under Arizona law? Well, I would hearken back to Arias, which is where this problem all sort of stemmed from. The actions taken to facilitate the crime have to cause the death. And in Arias, there was a gag that was put in place in order to facilitate the robbery, I guess, that was going on. And that's what actually caused the death. So what I would say is that the actions to facilitate the crime have to or to facilitate the crime have to cause the death. You take it as opposed to the State's interpretation. You put a facilitation overlay on the interpretation of in furtherance of. That's the way that I would interpret it. Interpreting Arizona case law is, I'm from Arizona, but it's sometimes hard. There was also a question, the court is concerned, did I raise IAC in the request for the COA? The motion for the COA was also a motion for reconsideration. Reconsideration focused the district court on where the district court went wrong. Where they went wrong, where Judge Collins went wrong was he never reached IAC because he thought the instruction was an accurate statement of Arizona law. And so that's what I was focused on. But the motion for COA requested a COA on Claim 3, and the grant of COA granted a COA on Claim 3. Claim 3 has always, in the supplemental PHC, has always had, and in the amended PHC, has always had an IAC component. Right. I think it's not so much what you said as what the district court said in its COA, because it deals with Claim 3, which is a Strickland claim, and then the COA to us, the grant, says frames itself in terms of the merits of the due process claim, which implies to me that he was considering a narrowing issue in the Strickland claim, and that's what he was preserving. Is that what your interpretation is, or do you have a different one? Right. He was interpreting the underlying due process claim. Yes. I mean, and so if — what is your position, then, on us getting — reaching the merits of the Strickland claim as opposed to the issue of due process in Winship? Well, I think that — I mean, do you think it requires a remand, or do you think we can decide that in the first instance? The Strickland claim really depends on the underlying due process claim. I think that the IAC claim is properly before this Court. Right. But there are a whole lot of IAC issues besides whether Winship applies or not. There's prejudice. There's performance. There are all sorts of other aspects of Strickland. You can't just win on due process and win the claim. You've got to prove that failing to raise it was deficient, and that deficiency was prejudicial, and so forth. Well, certainly performance-wise, this was a pre-1978 instruction. This was 14 years out of date by the time it was given. It should have been caught. It should have been part of the case. Right. I'm not asking you to argue, sir. I'm just saying who, in your view, decides that question if we get past due process? Do you think we can do it in the first instance, or should the trial court? I think that, quite honestly, I think that this Court can. The facts aren't going to be any different in district court than the facts are going to be here. And I think the facts are all laid out. The due process claim was not precluded by the trial court, and the district court did not find that the trial court had precluded the underlying due process  claim. The underlying the IAC claim at the trial court was defaulted initially, and then on reconsideration, the IAC claim was determined to be not colorable. But the district court held that the due process claim was not addressed at all, and that's how it got to de novo review. Right. Now we're calling it a merits decision, but that's still not defaulted. The underlying due process claim is not defaulted. Quickly, I wanted to point out that in the Miles opinion, Miles actually raised a causation argument. He didn't raise a Winship argument. So I'm not sure that we can rely on Miles. A Winship argument. A Winship argument. Miles wasn't, from what I can make from the opinion, talking about due process. He wasn't talking about Winship. He was talking about causation. And so Miles seems to me to be a causation case anyway. I think our questions are taking you over time. Judge Graber, do you have anything further? Any further questions? No. Thank you, though. All right. Judge Brevin. Thank you. Thank you for your arguments, and thanks again for your patience in coming down here to argue this case today. And we will be in recess. Thank you. All rise. This court for this session stands adjourned. Thank you.
judges: Thomas, Graber, Berzon